IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL KENDOLL,

          Plaintiff,

    v.

STATE OF OREGON; JOSH BROOKS, in his individual and official capacity; and ALEX GARDNER, in his individual and official capacity,

          Defendants.

Case No.: 3:24-cv-00330-AN

OPINION AND ORDER

      Plaintiff Michael Kendoll brings this against defendants State of Oregon (the "State") and Josh Brooks and Alex Gardner, in their individual capacities[1] (the "individual defendants"). Following this Court's ruling on defendants' partial motion to dismiss the first amended complaint, plaintiff filed a second amended complaint. Now pending before the Court is defendants' partial motion to dismiss the second amended complaint. For the reasons stated herein, defendants' motion is granted in full. As a result, plaintiff's first claim is dismissed with prejudice and without leave to amend, and the individual defendants are dismissed from this action. Plaintiff's sole remaining claim, for discrimination based on the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2), survives, as alleged against the State only. The parties are directed to file proposed case deadlines within thirty (30) days of the date of this Opinion and Order.

## LEGAL STANDARD

      The applicable legal standard is set forth in the Court's prior opinion and order in this case, *see* Op. & Order of March 31, 2025, ECF 23, at 1-2, and is not repeated here.

---

[1] Plaintiff's second amended complaint appears to continue to name the individual defendants in both their individual and official capacities. *See* 2d Am. Compl., ECF 25, at 1. However, in accordance with the Court's prior opinion and order in this case, *see* Op. & Order of March 31, 2025, ECF 23, at 8, the Court considers herein only plaintiff's claims against the individual defendants in their individual capacities.

1

## BACKGROUND

### A.    Procedural History

Plaintiff filed this case in Marion County Circuit Court on January 30, 2024, and defendants removed the case to federal court on February 22, 2024. *See* Not. of Removal, ECF 1. On March 28, 2024, plaintiff filed his first amended complaint (the "FAC"). FAC, ECF 12. In both the initial complaint and FAC, plaintiff asserted five claims: (1) two counts of a civil rights claim based on 42 U.S.C. § 1983, for violations of plaintiff's procedural and substantive due process rights and right to equal protection; (2) a second claim under Section 1983 for violation of plaintiff's First Amendment rights to freedom of association and to be free from retaliation for exercising the right to freedom of association; (3) a discrimination claim based on the FMLA (the "FMLA claim"); (4) a common law wrongful discharge claim; and (5) a negligence per se claim based on Oregon Revised Statutes §§ 181A.710 and 181A.68 and 43 U.S.C. § 1985(3). *See* FAC ¶¶ 42-83.

On April 18, 2024, defendants filed a partial motion to dismiss the FAC, ECF 13. Defendants sought dismissal of the individual defendants and all claims except the FMLA claim. *Id.* at 1, 6.[2] Plaintiff responded in opposition, ECF 18, and defendants replied in support, ECF 20. In a lengthy opinion and order, this Court granted defendants' partial motion to dismiss the FAC and, accordingly, dismissed all claims except the FMLA claim. Op. & Order of March 31, 2025. The Court dismissed the claims without prejudice and with leave to amend. *Id.* at 41.

On April 30, 2025, plaintiff filed a second amended complaint (the "SAC"). SAC, ECF 25. The SAC alleges only two claims: first, plaintiff reasserts the Section 1983 claim for violation of his due process rights, but this time only against Gardner; and second, plaintiff reasserts the FMLA claim, still against all defendants. *Id.* ¶¶ 44-56. On May 5, 2025, defendants filed a partial motion to dismiss the SAC. Defs. Partial Mot. to Dismiss SAC ("Def. Mot."), ECF 26. On May 20, 2025, plaintiff responded in opposition. Pl. Resp. to Def. Mot. ("Pl. Resp."), ECF 27. On May 21, 2025, defendants filed a reply in support of the

---

[2] All references to ECF pagination.

motion.  Defs. Reply Supp. Mot. ("Defs. Reply"), ECF 28.

**B.      Factual Allegations**

1.        *Factual Allegations Common to the FAC and SAC*

The vast majority of the allegations in the FAC and SAC are identical.  *Compare* FAC *with* SAC.

A comprehensive summary of these shared facts may be found in the Court's prior opinion and order, *see*

Op. & Order of March 31, 2025, at 3-8, and are not repeated here.

2.        *New Allegations in the SAC*

Plaintiff includes five new allegations in the SAC, as follows.  First, plaintiff clarifies that Gardner

terminated plaintiff and attaches as Exhibit A to the SAC a copy of the termination letter plaintiff received,

which is signed by Gardner.  SAC ¶ 4 & Ex. A, ECF 25-1.  In relevant part, the termination provides that

plaintiff was terminated for "Just Cause"; reviews pertinent sections of the Code of Ethical Conduct, OSP

Employee Handbook, and other departmental rules, polices, and expectations; notes that "policy violations

involving acts of deception or other dishonesty are especially egregious, because of the extent to which

Department efficacy depends upon the truthfulness and good reputation of its sworn members"; and that

"[i]t is not enough to be factually accurate if a response or statement is offered in a context and a manner

designed to leave an incorrect impression of fact."  *Id.* at Ex. A at 1-3 (emphases omitted).  The termination

letter then recites the pertinent facts of plaintiff's case and makes factual findings that (1) plaintiff "had

sexual and/or inappropriate physical contact with another employee while on duty and in a state vehicle,"

and (2) plaintiff "was dishonest and/or provided intentional inaccurate or incomplete information when

interviewed about misconduct allegations."  *Id.* at 6.

Second, plaintiff attaches as Exhibit B to the SAC a copy of the applicable collective bargaining

agreement ("CBA").  *Id.* ¶ 6 & Ex. B, ECF 25-2.  In relevant part, the CBA provides that employees who

are subject to the CBA may only be terminated for just cause, and that "the procedures described in th[e

CBA] are the full disciplinary and discharge remedies and procedures for which employees are entitled."

*Id.* at 22.

Third, plaintiff clarifies that the Clackamas County District Attorney's listing of plaintiff as a

"Brady officer" was "based solely on the investigation and findings by Major Gardner," and that "[l]aw enforcement officers that are placed on the Brady List are unable to work in the State of Oregon." *Id.* ¶ 41. In support of this allegation, plaintiff attaches as Exhibit F to the SAC "an arbitration opinion stating Brady Officers cannot meet the job qualifications." *Id.* ¶ 41 & Ex. F, ECF 25-6.

Fourth, plaintiff alleges that his "police certification, which is necessary to be employed by a law enforcement agency, has been under review since he was terminated . . . [and] is under review for dishonesty, which came out of the termination from Defendant." *Id.* ¶ 42. As Exhibit C to the SAC, defendant attaches two documents. *See id.* at Ex. C, ECF 25-3. The first is a letter plaintiff received from the Board on Public Safety Standards and Training (the "Board"), wherein the Board informed plaintiff that he "engaged in conduct that violates the Board's moral fitness standards" and that the Board would "determine whether to . . . revoke/deny [plaintiff's] application for certification." *Id.* at Ex. C at 1. The second is a memo, from the Department of Public Safety Standards and Training's ("DPSST") Professional Standards Compliance Coordinator to plaintiff, wherein DPSST informed plaintiff that he "was terminated for cause by the Oregon State Police (OSP)" after being "found to be untruthful during an internal investigation into conduct related to intimate contact with a woman inside his patrol vehicle while parked at a Fred Meyer store." *Id.* at Ex. C at 3. In a category titled "**Dishonesty**," the memo reads: "[Plaintiff] was intentionally dishonest when he provided deceptive and misleading statements to investigators when questioned about his conduct related to an allegation of his intimate contact with a woman inside his patrol car, while on duty and parked at a Fred Meyer department store." *Id.* (emphasis in original).

Fourth, plaintiff alleges that he "has been blocked from obtaining employment because of his termination from OSP and the pending police certification proceedings." *Id.* ¶ 43. In support of this assertion, plaintiff alleges that "[t]he Police Captain of Silverton Police Department stated that Plaintiff would be considered for the position, but because of his termination and pending police certification proceeds [*sic*] they are unable to consider him." *Id.* Plaintiff attaches to the SAC as Exhibit D a letter written by the Captain of the City of Silverton Police Department, Mark Gaither. *Id.* ¶ 43 & Ex. D, ECF 25-4. The letter is dated April 7, 2025 and indicates, in relevant part, that less than a year prior, the Silverton

4

Police Department "was hiring for a Lateral Police Officer, to which [he] met with [plaintiff] to discuss if [plaintiff] could even be considered for this position," but "[d]ue to [plaintiff's] termination . . . and the pending proceedings [Silverton Police Department] was unable to consider [plaintiff] for employment." *Id.*

Fifth and finally, plaintiff alleges that "[t]he now retired Sergeant from Oregon City additionally attempted to hire Plaintiff but was blocked because OSP cut Plaintiff's opportunity short to apply." *Id.* ¶ 43. Plaintiff attaches to the SAC as Exhibit E a letter from Justin Young, a recently retired law enforcement officer. *Id.* ¶ 43 & Ex. E, ECF 25-5. Young opines, in relevant part, that he "was so impressed by [plaintiff's] demeanor and performance [when working with plaintiff] that [Young] spent several years attempting to recruit [plaintiff] to join the Oregon City Police Department," but plaintiff "was unable to apply because he had been placed on leave by his employer, which single-handedly, [*sic*] cut his opportunity short to apply with" the Oregon City Police Department. *Id.*

## DISCUSSION

As a preliminary matter, plaintiff acknowledges that he now asserts his Section 1983 claim only against Gardner and his FMLA claim only against the State. *See* Pl. Resp. 11. As such, no claim is purported to be asserted against Brooks, and Brooks is appropriately dismissed from this action. Because plaintiff has already been granted leave to amend regarding Brooks' involvement in this action and has failed to proffer additional facts, Brooks' dismissal is with prejudice.

Defendants do not seek dismissal of the FMLA claim as alleged against the State. Thus, the only question remaining before the Court is whether plaintiff's Section 1983 claim against Gardner should survive. The parties largely disagree on two dispositive issues: (1) whether plaintiff has adequately alleged that Gardner has committed any qualifying acts sufficient to form the basis for liability under Section 1983; and (2) whether Gardner is entitled to qualified immunity. Finding in favor of defendants on both points, the Court holds that plaintiff's Section 1983 claim and Gardner are both appropriately dismissed. Again, because plaintiff has already been granted leave to amend regarding both the Section 1983 claim and Gardner's involvement in this action and it appears that further amendment would be futile, dismissal is with prejudice. The Court addresses each of the two issues presented in turn.

A.    **Qualifying Acts**

Plaintiff's Section 1983 claim fails because plaintiff has not demonstrated he was deprived of an existing federal constitutional right.  To state a claim under Section 1983, a plaintiff must demonstrate that he was deprived of an existing federal constitutional or statutory right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023) (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011)).  A state actor is not liable under Section 1983 "unless they play[ed] an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012).  Although there is generally no respondeat superior liability under Section 1983, *Murguia*, 61 F.4th at 1106, a plaintiff may state a claim for supervisory liability by alleging either that the defendant supervisor was personally involved in the constitutional deprivation or that a "'sufficient causal connection'" exists between the "'supervisor's wrongful conduct and the constitutional violation,'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

Here, it is not entirely clear what constitutional right plaintiff alleges Gardner violated.  The claim is presented as follows:

**FIRST CLAIM FOR RELIEF**

**42 USC § 1983—Fourteenth Amendment**

**Count One: Violation of Plaintiff's Substantive Due Process Rights**

**(Defendant Gardner)**

SAC 11.  In the allegations that follow, however, plaintiff describes "[p]rocedural due process rules" and the elements of a procedural due process claim and then identifies government employees' purported "'protected property interest in their continued employment if . . . the terms of their employment make it clear that the employee can be fired only for cause.'" *Id.* ¶¶ 45-48 (citing *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 921 (9th Cir. 2013)).  Plaintiff further asserts that Gardner "deprived Plaintiff of his Fourteenth Amendment rights without due process of law" and "failed to provide adequate notice and

6

opportunity to be heard regarding Plaintiff's termination." *Id.* ¶¶ 49-50. Plaintiff concludes that "Defendant violated Plaintiff's Fourteenth Amendment Right when Plaintiff was terminated without just cause" and "Defendant's actions have deprived Plaintiff of the right to continued employment." *Id.* ¶ 51. Plaintiff does not allege any second count under the Section 1983 claim's heading. Because the language of plaintiff's complaint is inconsistent regarding whether plaintiff asserts a violation of his procedural or substantive due process rights, the Court addresses each in turn.

       1.     *Procedural Due Process*

The Court begins with procedural due process, as it is more quickly disposed of. The Court previously considered plaintiff's allegations in the FAC regarding procedural due process and held that plaintiff's procedural due process claim failed because his allegations, taken as true, established that he received notice and an opportunity to be heard prior to his termination. Op. & Order of March 31, 2025, at 15-16. The relevant allegations are the same between the FAC and SAC. The allegations in both, taken as true, establish that plaintiff was represented by both a union representative and his Fraternal Order of Police Legal Defense Fund attorney throughout OSP's investigation into his alleged misconduct, including during both pre-termination interviews and the pre-dismissal hearing. *See id.*; *and see* SAC ¶¶ 5, 8, 10, 12, 20, 29. Only after the pre-dismissal hearing was plaintiff removed from service. *Id.* ¶¶ 4 (indicating that plaintiff was terminated on or about October 31, 2022), 29 (indicating that the pre-dismissal hearing took place on or about August 2, 2022). Thus, plaintiff was notified of the allegations against him; received an opportunity to be heard prior to his termination, as is preferable; and was represented in all adversarial proceedings. Therefore, his termination cannot be said to have violated his procedural due process rights. *See Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998). To the extent plaintiff's Section 1983 claim is based on an alleged violation of plaintiff's procedural due process rights, plaintiff's claim remains fatally flawed.

       2.     *Substantive Due Process*

More likely is that plaintiff intends to assert a violation of his substantive due process rights. On this issue, plaintiff alleges that Gardner "violated Plaintiff's Fourteenth Amendment right when Plaintiff

was terminated without just cause" and that Gardner's "actions have deprived Plaintiff of the right to continued employment."  SAC ¶ 51.  The Court first incorporates its previous discussion of Ninth Circuit law regarding substantive due process claims based on the right to pursue a particular profession.  *See* Op. & Order of March 31, 2025, at 16-17.  This law makes clear that plaintiff's substantive due process claim must fail.

First and foremost, though plaintiff asserts in a conclusory fashion that he was terminated without just cause, the documentation attached to the SAC plainly belies this allegation.  *See* SAC Ex. A at 1 (providing that plaintiff was terminated for just cause and explaining in detail the reasons for finding that plaintiff was dishonest); *id.* at Ex. B at 22 (providing that employees subject to the CBA may only be terminated for just cause); *id.* at Ex. C at 3 (DPSST memo identifying that plaintiff "was terminated for cause" after being "found to be untruthful during an internal investigation").  Generally, "when an exhibit to a complaint is inconsistent with the complaint's allegations, the exhibit controls." *Nguyen v. Bank of Am., NA*, 563 F. App'x 558, 558 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.")).  However, "[w]hen the document itself forms the basis for the allegation, the document must be examined as a whole," and ultimately, "[r]ather than accepting every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 455.  Here, plaintiff attaches the termination letter presumably to demonstrate Gardner's personal involvement in plaintiff's termination for purposes of Section 1983 liability; Gardner authored the document; and the reliability of the document appears relatively high, as it was created by Gardner in the course of his duties as Major and reflects a thorough investigation of the facts.  Plaintiff's allegation that he was terminated without just cause cannot be credited.

Second, even if the Court were to credit plaintiff's conclusory allegation on the issue of cause, plaintiff's substantive due process claim nonetheless fails because plaintiff has not alleged facts sufficient

to show a loss of profession. As described at length in the Court's prior opinion and order, there is only a substantive due process claim for a public employer's violations of occupational liberty in "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997-98 (9th Cir. 2007) (quoting *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)). In other words, "there is substantive due process protection against government employer actions that foreclose access to a particular profession to the same degree as government regulation." *Id.* at 998. Plaintiff has not met this high bar.

Plaintiff alleges that, as a result of his termination, he "cannot work in law enforcement" and "[e]ffectively his career is over"; "[h]is police certification has lapsed" and "is under review for revocation" for dishonesty; and "he has been listed as a Brady officer by the Clackamas County District Attorney, based solely on the investigation and findings by Major Gardner." SAC ¶¶ 41-42. He alleges that "[l]aw enforcement officers that are placed on the Brady List are unable to work in the State of Oregon" and attaches an arbitration opinion purportedly "stating [that] Brady Officers cannot meet the job qualifications." *Id.* ¶ 41. Finally, plaintiff alleges that he "has been blocked from obtaining employment because of his termination from OSP and the pending police certification proceedings." *Id.* ¶ 43. In support of this allegation, plaintiff attaches the previously described letters by Silverton Police Department Captain Gaither and retired law enforcement officer Young. *See* SAC ¶ 43 & Exs. D (Gaither), E (Young).

Plaintiff's allegations do not indicate that this is the kind of "extreme case" for which a substantive due process claim may lie. *See Engquist*, 478 F.3d at 997-98. Plaintiff alleges that his certification has "lapsed" (though he does not allege the circumstances under which it lapsed) and is "under review for revocation" for dishonesty. SAC ¶¶ 41-42. He does not, however, allege that his certification has actually been revoked. Further, the DPSST letter attached as Exhibit C to the SAC indicates that the pending police certification proceedings were undertaken by DPSST—not Gardner. *See* SAC Ex. C. Though plaintiff asserts that DPSST only undertook the certification proceedings as a result of Gardner's termination of

plaintiff's employment, there is no allegation that Gardner has any supervisory role over DPSST or any other role in DPSST's actions.  Similarly, plaintiff's "*Brady*" allegations are insufficient.  Plaintiff alleges that he was listed as a *Brady* officer by the Clackamas County District Attorney and, though he alleges that this listing was a result of his termination, plaintiff does not allege that Gardner has any supervisory role over the Clackamas County District Attorney or any other role in the Clackamas County District Attorney's actions.  Without the allegation of Gardner's personal participation in an alleged constitutional deprivation, the Court cannot say that Gardner's actions amounted to a "government blacklist" that, in effect, has "yanked" plaintiff's license.  *Engquist*, 478 F.3d at 997-98.  Furthermore, in support of his allegations, plaintiff provides only two anecdotal letters indicating he could not obtain employment at two Oregon law enforcement agencies.  This is simply insufficient to show that Gardner took "actions that foreclose[d] [plaintiff's] access to [law enforcement] to the same degree as government regulation." *Id.* at 998.

**B.     Qualified Immunity**

Having found that plaintiff's constitutional rights were not violated, Gardner is also entitled to qualified immunity. *See Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) ("Qualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.").

//

//

//

//

//

//

//

//

//

10

## CONCLUSION

For the reasons described herein, defendants' partial motion to dismiss second amended complaint, ECF 26, is GRANTED.  Defendants Josh Brooks and Alex Gardner are DISMISSED from this action with prejudice, and plaintiff's Section 1983 claim is also DISMISSED with prejudice.  Plaintiff's FMLA claim against the State proceeds.  The parties are directed to file proposed case deadlines within thirty (30) days of the date of this Opinion and Order.


IT IS SO ORDERED.


DATED this 26th day of March, 2026.

Adrienne Nelson
United States District Judge

11